IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANNA MAE PRESTON, | No. C 09-02262 WHA |
| Petitioner, | |
| v. | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| MARY LATTIMER, Warden, | |
| Respondent. | |
| _____/ | |

Petitioner Dianna Preston, a California state prisoner proceeding pro se, seeks a writ of habeas corpus under 28 U.S.C. 2254. For the reasons set forth below, the petition is **DENIED**.

**BACKGROUND**

On May 28, 2003, a jury found petitioner guilty of the first-degree murder of Kevin LaPorta, the father of petitioner's toddler granddaughter, Kara. The events leading to petitioner's conviction are detailed below.

In late March or early April of 2002, petitioner began expressing concerns to her daughter, Heather Pearce, that LaPorta might be molesting Kara. Heather is Kara's mother. Heather and LaPorta were not married.

After an overnight visit at LaPorta's house, Heather noticed that Kara's clitoral hood was swollen on one side. Heather and petitioner took Kara to two hospitals for an examination. According to petitioner, the Humboldt County Sheriff's Department discouraged them from conducting a sexual assault examination of Kara because it would be fruitless and highly invasive. No examination was performed.

In late April 2002, petitioner went to a gun shop and indoor shooting range in Eureka. She bought a gun, a Charter Arms .38 Special, and practiced at the range.

In early May, after picking up Kara from a visit with LaPorta, petitioner and Heather observed a white substance on the sides of her vagina. They took Kara to the hospital. The substance tested positive for semen. Detective Robert Metaxas of the Eureka Police Department warned Heather that Kara must never be alone with LaPorta.

When confronted with the test results, LaPorta seemed shocked but was cooperative with the police investigation. He agreed to provide a blood and DNA sample. A subsequent DNA analysis eliminated LaPorta as the source of the semen sample taken from Kara.

Detective Metaxas then turned the focus of his investigation to petitioner and Heather. When he told Heather that LaPorta was eliminated as the source of the semen, she was astounded. Petitioner and Heather believed that LaPorta had somehow "planted" semen to implicate Heather.

On July 19, 2002, petitioner told Heather that she was going out to buy shoes. She proceeded to hitchhike to Eureka. Petitioner was seen in the parking lot of LaPorta's acupuncture office in Eureka between 2:00 or 3:00 and 6:00 in the afternoon, sitting on the curb. She wore an auburn wig and sunglasses. As LaPorta left his office, she approached him, pulled out a revolver and shot him twice. LaPorta ran into a nearby restaurant. Petitioner followed him and shot him again. She then walked to the waiting area of the restaurant and sat down. She apologized for the commotion and said that she was out to get LaPorta because he had molested her granddaughter. When the police arrived, she told them that she thought she just killed a man. In subsequent interviews, she stated that she intended to kill LaPorta in order to protect Kara.

At trial, petitioner pled not guilty by reason of insanity. Trial counsel also requested jury instructions regarding second-degree murder, manslaughter based on unreasonable defense of

another, and voluntary manslaughter due to heat of passion. The trial court declined to give manslaughter based on unreasonable defense of another instructions for lack of supporting evidence. The remaining instructions were given to the jury.

The jury rejected petitioner's defense and convicted petitioner of first-degree murder with personal use of a firearm, and the special circumstance of lying in wait. She was sentenced to life without parole and a restitution fine was imposed.

The California Court of Appeal affirmed the judgment in an unpublished opinion on February 14, 2005. *People v. Preston*, No. A103369, 2005 WL 348962 (Feb. 14, 2005). Petitioner subsequently filed habeas petitions in Humboldt County Superior Court, the California Court of Appeal and the Supreme Court of California. All were denied.

Petitioner filed the instant federal habeas petition on September 11, 2009. She alleges that she received ineffective assistance of counsel at trial, the prosecutor committed misconduct, the trial judge was biased, the trial court's failure to give certain jury instructions violated her right to due process and the instructions given violated her constitutional rights. Respondent filed an answer on May 28, 2010, and petitioner filed a traverse on August 24, 2010.

**LEGAL STANDARD**

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). If the state court did not reach the merits of a claim, federal review of the claim is de novo. *Nulph v. Cook*, 333 F.3d 1052, 1057 (9th Cir. 2003).

3

A federal court must presume the correctness of the state court's factual findings. 28 U.S.C. 2254(e)(1). The state court decision implicated by section 2254(d) is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005). When there is no reasoned opinion from the state's highest court to consider a petitioner's claims, a federal court must "look through" the summary disposition to the last reasoned decision. *Ylst*, 501 U.S. at 801-06.

Habeas relief is warranted only if the constitutional error at issue had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Penry v. Johnson*, 532 U.S. 782, 796 (2001).

**ANALYSIS**

**A.    Claim One**

Petitioner alleges numerous instances of ineffective assistance of counsel at trial. She asserts that her attorney misinformed her with regard to various aspects of the law, particularly the law governing voluntary manslaughter, and failed to inform her with regard to other aspects.

Claims of ineffective assistance of counsel are examined under *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffectiveness of counsel, the petitioner must establish two factors. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms, *id.* at 687–68, "not whether it deviated from best practices or most common custom," *Richter*, 131 S. Ct. at 788 (citing *Strickland*, 466 U.S. at 650). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 689). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Ibid.* Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the

4

errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.  Overall, "the standard for judging counsel's representation is a most deferential one." *Richter*, 131 S. Ct. at 788.

Petitioner asserts that her attorney falsely told her that whether or not any molestation occurred was irrelevant to her defense.  Counsel's advice however, was correct.  Under California law, where there is reasonable belief in an event giving rise to a provocation, the provocation may be deemed adequate for voluntary manslaughter, *even if the belief is false*.  *People v. Brooks*, 185 Cal. App. 3d, 687, 694 (1986) (emphasis added).  Since counsel's advice was sound, his representation was not deficient.

Petitioner claims that trial counsel wrongly advised her that "without [her] insanity plea, [she] was one hundred percent certain to be convicted of first degree murder and sentenced to life without parole" (Pet. at App. D, p. 21).  Given the overwhelming evidence of premeditation, trial counsel's assessment appears reasonable.  Petitioner bought a gun and practiced shooting it, travelled to Eureka with her gun and ammunition, waited for LaPorta in the parking lot, walked up to him and shot him before following him into a restaurant and shooting him several more times. Moreover, petitioner fails to demonstrate that counsel's prediction adversely affected the outcome of his trial.  *See Strickland*, 466 U.S. at 694.

Petitioner claims that trial counsel falsely told her that "heat of passion" manslaughter has a requirement of immediacy, but her legal research indicates that legally adequate provocation may occur over a considerable period of time.  The record does not support petitioner's allegations. When requesting jury instructions regarding voluntary manslaughter at a hearing attended by petitioner, trial counsel noted that heat of passion can build over time (Resp't's Ex. 8 at 422). Furthermore, heat of passion can also cool.  As the jury instructions explained, a defendant must act "under direct and immediate influence of the quarrel or heat of passion" and not after "sufficient time has elapsed for angry passion to end and for reason to control [the accused's] conduct" *(id.* at 539).  Since petitioner killed LaPorta approximately two months after Kara's last visit with him, "heat of passion" does not appear to have been a viable defense theory.

Petitioner alleges that trial counsel falsely told her that purchasing a gun ahead of time proved malice aforethought and "automatically [made her] guilty of murder" (Pet. at App. D, p. 21).

5

Trial counsel's assessment of the evidence however, appears reasonable. Petitioner's purchase of her gun over two months before killing LaPorta is strong evidence of malice aforethought. In any event, petitioner fails to demonstrate that trial counsel's statement adversely affected the outcome of the trial. *Strickland*, 466 U.S. at 694.

Petitioner asserts that her trial counsel falsely told her that lying in wait alone proves first degree murder. California Penal Code § 189 provides that "all murder which is perpetrated by means of . . . lying in wait . . . is murder of the first degree." Since trial counsel's explanation of the law was correct, his performance was not deficient.

Petitioner further alleges that trial counsel failed to inform her of various aspects of the law. More specifically, she asserts that he did not tell her that a "jury is entitled to find a defendant guilty of a lesser included offense," that voluntary manslaughter is a lesser included offense of murder, that a court must find a defendant guilty of the lesser offense when the evidence equally supports guilt of a greater and a lesser offense, that evidence of provocation overcomes a presumption of malice, that the heat of passion justifies giving voluntary manslaughter instructions if such passion would be aroused in the mind of an ordinary person under the circumstances, that the "legal definition of malice" does not apply to her, that malice is an essential element of murder, that the distinguishing element between murder and manslaughter is malice, that if malice is not proven beyond reasonable doubt, the jury must convict only of manslaughter, that a crime "could be mitigated to manslaughter if the defendant establishes by a preponderance of the evidence that he acted under extreme emotional disturbance," that the jury must be instructed on a defense where there is substantial evidence of excuse or justification, that the jury decides all matters of fact, and that the "character of the defendant is crucial in determining whether the a homicide is murder or manslaughter" (Pet. at App. D, p. 22-24). Petitioner fails to cite any Supreme Court authority requiring trial counsel to discuss in detail the law of a lesser included offense, or every aspect of malice and voluntary manslaughter with his client. Moreover, petitioner fails to establish that had she been informed of the aforementioned, the outcome of her trial would have been different. *Strickland*, 466 U.S. at 694.

Petitioner alleges numerous other similar instances of ineffective assistance. The court has reviewed all of her allegations and finds that they all lack merit. Accordingly, claim one is **DENIED**.

**B.      Claim Two**

Petitioner alleges that her trial counsel aided the prosecution in convicting her of first-degree murder throughout her trial. She contends that counsel "trivialized, distorted or left out altogether [her] real evidence for the molest; exaggerated or misrepresented [her] trivial evidence, and assassinated her character" (Pet. at App. D, p. 26).

More specifically, petitioner contends that counsel neglected to investigate and present favorable evidence. She asserts for example, that the jury should have heard that she passed a Computer-assisted Voice Stress Analysis (CVSA) test, a type of polygraph test (Pet. at App. E, p. 37). Defense counsel did, however, attempt to introduce this evidence, but the prosecutor refused to stipulate to its admission. Under California law, such a stipulation is required for the admission of the results of polygraph tests. *See* Cal. Evid. Code § 351.1(a). Furthermore, evidence that petitioner took the test was admitted when a police detective's statement was played for the jury. In the statement, Detective Hubbard refers to petitioner having taken the test (Resp't's Ex. 2, at 13-14). Accordingly, counsel was not deficient for failing to present this evidence.

Petitioner alleges that counsel should have presented evidence that LaPorta refused to take a CVSA test. California Evidence Code § 351.1(a) however, prohibits admission of evidence of an offer to take or a refusal to take a polygraph examination. Evidence of LaPorta's refusal to take a CVSA test therefore would have been inadmissible at trial. Counsel's failure to present this evidence did not constitute deficient performance.

Petitioner contends that trial counsel entered a stipulation regarding the CVSA evidence which was so "damaging that it alone undermines confidence in the verdict" (Pet. at App. D, p. 27). According to petitioner, Detective Metaxas, who was investigating Kara's alleged molestation, told her, "as a ruse," that LaPorta had taken and passed the CVSA test (Pet. at App. E, p. 37). In taped statements played to the jury, petitioner referred to her belief that LaPorta had passed a lie detector test. Subsequently, the parties entered the following stipulation (Resp't's Ex. 8 at 505):

7

> There has been mention of a voice stress analyzer test. Any such test has not been proven to be scientifically reliable. The test is used as an investigative tool, however the results are generally inadmissible in a court of law. In this case such evidence is offered only to show the belief or mental state of the person who mentioned the test. It is not offered to show that such test was actually taken or what if any results were obtained from it.

Petitioner's fails to demonstrate that counsel was ineffective for entering the stipulation. He does not establish, for example, that the stipulation inaccurately summarized the law governing the admissibility of polygraph tests or the relevance of the evidence to petitioner's mental state. Petitioner's allegation lacks merit.

Petitioner further alleges that counsel was ineffective for failing to disclose that Heather had taken and passed the CVSA test when he questioned her and Detective Metaxas at trial, to find out that LaPorta had actually refused to take the CVSA test, to discover that Detective Metaxas 'had lied to Heather about it," and to ascertain, in questioning Heather, the basis for petitioner's belief that LaPorta was "evil" (Pet. at App. E, p. 41). With respect to all of these allegations, even assuming that counsel's performance was somehow deficient, petitioner fails to establish that but for his errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

Petitioner also alleges that counsel was ineffective for failing to preserve "issues" in connection to the CVSA evidence for appeal. Since no error occurred in connection to the CVSA evidence, there were no claims to preserve for appeal.

Petitioner asserts that counsel was ineffective for failing to present evidence of the swelling of Kara's clitoris after her second visit with LaPorta. Kara's second visit with LaPorta took place in April 2002. Petitioner killed LaPorta in July 2002. To the extent that petitioner alleges that this evidence would have supported a finding of voluntary manslaughter due to heat of passion, petitioner fails to establish that any provocation occurring in April 2002 would have continued to arouse the passion of an ordinary person three months later when LaPorta was killed. *See Brooks*, 185 Cal. App. 3d at 694. Trial counsel's decision to not focus on Kara's injuries was reasonable.

Petitioner also asserts that counsel failed to investigate medical records relating to Kara's injury and failed to present evidence of Kara's behavior, which led petitioner to suspect molestation. As noted above, trial counsel's decision to not focus on Kara's injuries was reasonable.

8

Furthermore, even assuming that counsel's performance was somehow deficient in this regard, petitioner fails to establish that but for his errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

Petitioner alleges that trial counsel "suppressed evidence, failed to object to prosecutorial misconduct and assisted the district attorney in distorting everything the jury heard" (Pet. at App. D, p. 27). Petitioner's allegations are vague and conclusory, and accordingly lack merit. *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

Petitioner alleges myriad other similar instances of ineffective assistance. The court has reviewed all of her allegations and finds that they all lack merit. Accordingly, petitioner's claim two is **DENIED**.

## C.     Claim Three

Petitioner alleges that the prosecutor committed misconduct by withholding certain evidence from the jury. She asserts that the prosecutor failed to disclose that LaPorta refused to take the CVSA test, withheld a medical report documenting Kara's injury, and failed to disclose that Detective Metaxas had lied to Heather about LaPorta having taken the CVSA test. She further alleges that the prosecutor committed misconduct by asserting in his opening statement that Kara had undergone a "sexual assault response team" (SART) exam which failed to reveal molestation. She asserts that the only SART exam Kara undertook revealed that the substance found on the sides of her vagina following her visit with LaPorta was, in fact, semen.

Respondent asserts that this claim is procedurally defaulted because the state court denied it on the independent and adequate state law ground, created by *In re Dixon*, 41 Cal. 2d 756 (1953), that it could have been, but was not on raised on direct appeal. Respondent is correct. *See Smith v. Crose*, 2010 WL 1660240 (E.D. Cal. 2010), *Protsman v. Pliler*, 318 F. Supp. 2d 1004 (S.D. Cal. 2004). Even assuming that the claim is not defaulted however, it lacks merit.

The Supreme Court has held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Evidence is material "if there is a reasonable probability that, had the evidence

been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

"There are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Here, petitioner fails to establish that LaPorta's refusal to take the CVSA test was "material" to her guilt or punishment, or that the prosecution's non-disclosure of this evidence prejudiced her. *See Brady*, 373 U.S. at 87; *Strickler*, 527 U.S. at 281. Accordingly, no *Brady* violation occurred.

The prosecution's alleged non-disclosure of Kara's medical report also fails to give rise to a *Brady* violation. The medical report at issue is one prepared by Dr. Joseph Carroll, dated April 27, 2002, in which he notes the "swelling of the clitoral hood" (Pet. at App. F, p. 52). This document does not appear to be either exculpatory or impeaching. *Strickler*, 527 U.S. at 281-82 . Petitioner also fails to demonstrate that the prosecution was in possession or aware of this report. *See United States v. Hsieh Hui Mei Chen*, 754 F.2d 817, 824 (9th Cir. 1985) (prosecution not required to disclose information it does not possess.)  No *Brady* violation occurred.

The prosecution's failure to disclose that Detective Metaxas had lied to Heather about LaPorta having taken the CVSA test similarly fails to give rise to a *Brady* violation. Apparently, Detective Metaxas made this statement after the focus of his investigation of Kara's alleged molestation turned to petitioner and Heather. Petitioner fails to establish that this nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict. *Strickler*, 527 U.S. at 281.

Finally, petitioner's contention that the prosecutor committed misconduct by asserting in his opening statement that Kara's SART exam failed to reveal molestation also lacks merit. The prosecutor's opening statements are not contained in the record pursuant to California Appellate Court Rule 8.320(c)(3). Instead, petitioner offers her notes, taken during trial, which state: "SART not done 1st time because the sheriff lied about the nature of the exam. (Can't say exam showed

10

nothing.) Said the exam would hurt the baby" (Pet. at App. F, p. 56).  Assuming that petitioner's notes accurately reflect the prosecutor's statements at trial, his misstatement that a SART exam was conducted during Kara's first medical visit does not rise to the level of egregious misconduct that amounts to a violation of due process.  *See Thompson v. Borg*, 74 F.3d 1571, 1576 (9th Cir. 1996) (even if a prosecutor's argument is egregiously improper, a federal court cannot issue a writ of habeas corpus to state authorities unless the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.")  The prosecutor's alleged comments did not render petitioner's trial unfair.

The court has reviewed all of the allegations raised in petitioner's third claim and concludes that they lack merit.  Accordingly, claim 3 is **DENIED**.

### D.    Claim Four

Petitioner asserts that judge was impartial because he initially denied a request for a change of venue, declined to give voluntary manslaughter instructions, rendered her "Marsden" hearing a "farce," and succumbed to "small town dynamics" and "groupthink" (Pet. at App. D, p. 31-34).

Respondent asserts that this claim is procedurally defaulted because the state court denied it on the independent and adequate state law grounds that it could have been, but was not on raised on direct appeal.  As in claim 3, respondent is correct.  Even assuming that the claim is not defaulted however, it lacks merit.

The Due Process Clause guarantees a criminal defendant the right to a fair and impartial judge.  *See In re Murchison*, 349 U.S. 133, 136 (1955); *Kennedy v. Los Angeles Police Dep't*, 901 F.2d 702, 709 (9th Cir. 1989).  A claim of judicial misconduct by a state judge in the context of federal habeas review does not simply require that the federal court determine whether the state judge committed judicial misconduct; rather, the question is whether the state judge's behavior "rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995) (citations omitted), *cert. denied*, 517 U.S. 1158 (1996).  A state court finding of the absence of judicial bias is entitled to the presumption of correctness under 28 U.S.C. 2254(e)(1).  *Ortiz v. Stewart*, 149 F.3d 923, 938 (9th Cir. 1998).

11

1    Petitioner's contends that the judge was biased because he initially denied her motion for a
2 change of venue, and when he ultimately granted it, lamented the difficulty the victim's friends and
3 family would experience attending the trial. As discussed below, these allegations lack merit.
4    In his order denying petitioner's motion for a change of venue, the judge stated:

> There are factors which favor both retention and change of venue. In considering those factors, both quantitavely and qualitatively, and the facts and analysis underlying each of the factors, it cannot be said at this stage of the proceedings there is a reasonable likelihood that the defendant cannot receive a fair and impartial trial in Humboldt County. The most that can be said is that such is a mere a possibility. Jury questionnaires and/or voir dire may help to answer whether that possibility rises to the required higher level.

9 (Resp't's Ex. 1 at 187-188). Following the completion of voir dire, petitioner's counsel renewed his
10 motion for a change of venue. The trial court granted this motion, noting that "it is without question
11 that there is a reasonable likelihood that Miss Preston cannot get a fair and impartial trial in this
12 county due to the extensive pretrial publicity and the knowledge that prospective jurors have about
13 the case and the opinions that they have formed" (Resp't's Ex. 8 at 11). The court noted that it was
14 "mindful of the unfortunate effects that the change of venue will have on so many," that it would be
15 a financial burden for the county, offices of the District Attorney and Public Defender, and that it
16 would be difficult for the friends and family of the victim to attend the trial (*id*. at 12).

17    The judge's rulings and comments do not provide evidence of bias. The judge merely
18 expressed sympathy for the many parties who would be inconvenienced by his ruling. Petitioner
19 fails to overcome the overcome the presumption of correctness of the state court's finding of a lack
20 of judicial bias. *Ortiz*, 149 F.3d at 938.

21    Petitioner alleges that the judge was biased because he initially ruled that voluntary
22 manslaughter instructions were not warranted for lack of supporting evidence. Petitioner's
23 disagreement with the judge's legal ruling does not constitute evidence of bias. *See Poland v.*
24 *Stewart*, 117 F.3d 1094, 1103 (9th Cir.1997) (judicial rulings almost never constitute a valid basis
25 for allegations of bias.) Moreover, as petitioner herself admits, the judge ultimately did give the jury
26 voluntary manslaughter instructions (Pet. at App. D, p. 31). Petitioner's allegation lacks merit.

27    Petitioner alleges that the judge displayed bias at her "Marsden" hearing, rendering his
28 decision that her trial counsel was adequately representing her "meaningless" (Pet. at App. D, p. 33).

12

1 Petitioner's conclusory allegations are insufficient to overcome the state court's factual finding of a
2 lack of judicial bias. *Ortiz*, 149 F.3d at 938.

3 Petitioner alleges that various factors, such as "small town dynamics," the phenomenon of
4 "groupthink," and the fact that the judge at her trial was elected, all provide additional evidence of
5 bias (Pet. at App. D, p. 3-34). Again, petitioner's conclusory allegations are insufficient to
6 overcome the state court's factual finding of a lack of judicial bias. *Ortiz*, 149 F.3d at 938.

7 The court has reviewed all of petitioner's allegations of judicial bias and concludes that none
8 have merit. Claim four is therefore **DENIED**.

### E. Claim 5

10 Petitioner alleges that the trial court violated his constitutional rights by failing to give
11 certain required jury instructions. Respondent counters that this claim is procedurally defaulted
12 because the state court denied it on the independent and adequate state law grounds that it could
13 have been, but was not on raised on direct appeal. As in claims 3 and 4, respondent is correct. Even
14 assuming that the claim is not defaulted however, it lacks merit.

15 In order to obtain federal habeas relief on grounds of instructional error, a petitioner must
16 prove that the error "so infected the entire trial that the resulting conviction violates due process."
17 *Estelle v McGuire*, 502 U.S. 62, 72 (1991). The instruction must be viewed in the context of the
18 entire trial and the jury instructions taken as a whole. *Ibid*. "An omission, or an incomplete
19 instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431
20 U.S. 145, 155 (1977).

21 Petitioner contends that the trial court should have instructed the jury with CALJIC No. 8.74
22 because a use note suggests that "this instruction be given sua sponte" (Pet. at App. D, p. 34). She
23 further alleges that the trial court erred by failing to instruct the jury with CALJIC 8.75 because its
24 use note states that "the court must give either 8.75 or else 17.10 and 17.49. 17.10 by itself is not an
25 option." *Ibid*. Petitioner states that at her trial, only CALJIC 17.10 was given. *Ibid*. Petitioner also
26 claims that the court erred by failing to instruct, in accordance with California case law, that "a
27 homicide which just misses being justifiable by a hair is not murder but manslaughter." *Id*. at 35.
28 Finally, petitioner alleges that the trial court erred by failing to instruct that California Penal Code

13

§ 1159 allows a jury "to convict a defendant of a lesser included offense for any reason." *Ibid*.

Petitioner fails to demonstrate that the trial court's failure to give the above-mentioned jury instructions violated her federal right to due process. At most, she raises errors of state law, which are not cognizable on federal habeas. *Estelle*, 502 U.S. at 71-72. Accordingly, claim five lacks merit and is **DENIED**.

### F.     Claim Six

Petitioner alleges that CALJIC No. 8.11 "unconstitutionally shifted the burden of proof to the defense" (Pet. at App. D, p. 35). She contends that since CALJIC No. 8.11 states that "malice is express where there is manifested an intention *unlawfully to kill* a human being," but CALJIC No. 8.40 states that "every person who *unlawfully kills* another human being without malice aforethought but either with an intent to kill or with conscious disregard for human life is guilty of manslaughter," there is no such thing as voluntary manslaughter because "every intentional, unlawful killing is done with malice" under the definition of CALJIC No. 8.11. *Id*. at 35-36a (emphasis added).

Respondent counters that this claim is procedurally defaulted because the state court denied it on the independent and adequate state law grounds that it could have been, but was not on raised on direct appeal. As in claims 3–5 , respondent is correct. Even assuming that the claim is not defaulted however, it lacks merit.

When the instructions issued at petitioner's trial are viewed as a whole, it is clear that the jury was properly instructed. *See Estelle*, 502 U.S. at 72. The voluntary manslaughter instructions began as follows:

> Every person who unlawfully kills another human being without malice aforethought but either with an intent to kill or with conscious disregard for human life is guilty of voluntary manslaughter in violation of Penal Code Section 192(a). There is no malice aforethought if the killing occurred upon a sudden quarrel or heat of passion.

(Resp't's Ex. 8 at 537). The jury was also instructed as follows:

> The distinction between murder and manslaughter is that murder requires malice while manslaughter does not. When the act causing the death though unlawful is done in the heat of passion or is excited by a sudden quarrel that amounts to adequate provocation the offense is manslaughter. In that case, even if an intent to kill exists, the law is that malice which is an essential element of murder is absent.

*Id*. at 540 (emphasis added). The record demonstrates that jury was clearly instructed on the distinction between murder and manslaughter, and was told that it could find petitioner guilty of voluntary manslaughter even if it found that she had an intent to kill. Petitioner's claim six is therefore **DENIED**.

## CONCLUSION

The state court's adjudication of petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court proceedings. Accordingly, the petition is **DENIED**. The clerk shall enter judgment in favor of respondent and close the file.

Furthermore, a certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

**IT IS SO ORDERED.**

**DATED:** May 6, 2011

**WILLIAM H. AlSUP**
**United States District Judge**